# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MORGANTOWN MACHINE & HYDRAULICS OF OHIO, INC., et al., | ) ) ) | CASE NO. 5:15-cv-1310 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | **MEMORANDUM OPINION** |
| AMERICAN PIPING PRODUCTS, INC., | ) ) ) | |
| DEFENDANT. | ) | |

Before the Court is the motion to dismiss or transfer filed by defendant American Piping Products, Inc. (Doc. No. 12 ["Motion"].) Plaintiffs Morgantown Machine & Hydraulics of Ohio, Inc. and Swanson Industries, Inc. filed a memorandum in opposition (Doc. No. 13 ["Opp'n"]) and defendant filed a reply (Doc. No. 14 ["Reply"]). The gravamen of defendant's motion is that the contract plaintiffs are suing on "includes a valid and enforceable forum selection clause that mandates venue exclusively in state or federal courts located in or having jurisdiction over Saint Louis County, Missouri[.]" (Motion at 68.)[1] Plaintiffs assert that this clause is not part of the parties' agreement. For the reasons set forth below, defendant's motion to dismiss is denied without prejudice; defendant's motion to transfer is granted.

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

## I.

The motion of American Piping Products, Inc. ("APP") is somewhat vague as to the legal authority under which it is brought, only generally asserting that dismissal or transfer of venue is appropriate "pursuant to Fed. R. Civ. P. 12(b) and 28 U.S.C. § 1404(a)[.]" (Motion at 68.) Although many courts, including this one, have used Rule 12(b)(6) to enforce forum selection clauses, the Supreme Court has recently identified § 1404(a) as "a mechanism for enforcement of forum-selection clauses that point to a particular federal district[,]" *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, -- U.S. --, 134 S. Ct. 568, 579, 187 L. Ed. 2d 487 (2013),[2] further noting that "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* (quotation marks and citation omitted).[3] The Sixth Circuit, noting that the Court in *Atlantic Marine* declined to extend its ruling to Rule 12(b)(6) dismissals, has found that a district court did not abuse its discretion by dismissing an action under Rule 12(b)(6) instead of transferring it, where only dismissal had been sought. *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 933 (6th Cir. 2014), *cert. denied*, 136 S. Ct. 791 (2016).

That said, before the Court can decide whether to dismiss or to transfer this case, it must decide, first, whether APP's Standard Terms & Conditions of Sale (which include the

---

[2] Where the forum selection clause points to a state or foreign forum, it is appropriate to enforce it through the doctrine of *forum non conveniens*, which § 1404(a) merely codifies for a particular subset of cases where the transferee court is within the federal court system. *Atlantic Marine*, 134 S. Ct. at 580 (citation omitted).

[3] The Court explained how "a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atlantic Marine*, 134 S. Ct. at 581. "First, the plaintiff's choice of forum merits no weight[,]" and the party ignoring the forum selection clause has the burden of establishing that transfer is unwarranted. *Id.* "Second, … [the court] should not consider arguments about the parties' private interests[,]" aside from those expressed in the forum selection clause. *Id.* at 582. And, "[t]hird, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules[.]" *Id.*

forum selection clause) are part of the contract between APP and MMHOH, and, second, whether the forum selection clause, if applicable, is valid and enforceable.

## II.

### A.

Both sides have submitted matters outside the complaint to support their respective positions. Where a party challenges either venue or jurisdiction, the court may consider matters outside the pleadings and "is empowered to resolve factual disputes." *Tenn. Imp., Inc. v. Filippi*, 745 F. Supp. 1314, 1320 (M.D. Tenn. 1990) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

### B.

Morgantown Machine & Hydraulics of Ohio, Inc. ("MMHOH"), an Ohio corporation, and Swanson Industries, Inc. ("Swanson"), a West Virginia corporation (collectively, "plaintiffs"), manufacture hydraulic cylinders for use in offshore oil rigs. (Doc. No. 1, ["Compl."] ¶¶ 1, 2, 8.) American Piping Products, Inc. ("APP" or "defendant") is a Missouri-based manufacturer/distributor of steel pipes and tubes. (*Id.* ¶¶ 3, 9.)

On June 1, 2011, Jack Marshall, MMHOH's Products Specialist, requested a price quotation from APP by utilizing the "Request a Quote" form on APP's website. (Doc. No. 13-1 ["Marshall Decl."] ¶¶ 1, 3; Doc. No. 12-2 ["Hofman Decl."] ¶ 2 & Ex. A.)

On August 10, 2011, Richard Gilmore, MMHOH's Materials Manager, received an email from James Hofman, an APP salesman, with APP's Price Quotation Q132442. (Doc.

No. 13-2 ["Gilmore Decl."] ¶¶ 1, 3, 5 & Ex. A.) This quote stated the following, in easy to read typeface:

> This quotation and all sales resulting from it, are subject
> to our Standard Terms & Conditions of Sale and available
> upon your request.
> ALL PRICES SUBJECT TO FINAL CONFIRMATION
> ALL ITEMS ARE OFFERED SUBJECT TO PRIOR SALES
> PRICES IN US$.
>
> Visit our website at www.amerpipe.com

(Doc. No. 13-2 at 162.) Following a telephone conference between Gilmore and Hofman, Q132442 was revised to clarify that the tubing described in the price quotation would satisfy the requirements on Drawing No. 0332-010-040 REV C. (Gilmore Decl. ¶ 6 & Ex. B; Hofman Decl. ¶ 7 & Ex. C.) The language quoted above was also on every page of the revised price quotation. (Hofman Decl. ¶ 7.)

On or about August 15, 2011, MMHOH issued its Purchase Order 24531 ("PO") to APP for the purchase of "tubing per Quote Q132442." (Hofman Decl. ¶ 8 & Ex. D; Gilmore Decl. ¶ 9 & Ex. C.) MMHOH never requested a copy of APP's Standard Terms & Conditions of Sale referenced in Quote Q132442 (Gilmore Decl. ¶ 8), nor does PO 24531 reflect any objection by MMHOH to those Terms & Conditions (Hofman Decl. ¶ 14 (1st)[4]).

After receiving PO 24531, APP ordered conforming tubing from its supplier. On August 29, 2011, Hofman sent Gilmore an email, attaching APP Order Confirmation S224352 in PDF format, and requesting that Gilmore review and confirm that it was correct. (Hofman Decl.

---

[4] This declaration has two paragraphs numbered "14."

4

¶¶ 9, 10 & Ex. E.) Every page of Order Confirmation S224352 contained the following language:

> Please review this sales confirmation for accuracy. American Piping
> Products terms and conditions of sales can be viewed at
> http://www.amerpipe.com/terms-conditions.php.

(Doc. No. 12-2 at 103.) In response, Gilmore initially indicated that he would need another day to get "all of our guys to sign off[.]" (Doc. No. 12-2 at 105.) Then, on September 1, 2011, Gilmore emailed Hofman, indicating that "everything is correct." (Hofman Decl. ¶ 13 & Ex. G.)

MMHOH received the tubing in mid-February 2012. (Marshall Decl. ¶ 8.) MMHOH welded the tubing into hydraulic cylinders and supplied them to overseas customers in January 2013. In April 2014, MMHOH was notified of problems with the cylinders. (*Id*.)

In their complaint, plaintiffs allege that APP breached the parties' contract and breached implied warranties of merchantability and fitness for a particular purpose by supplying materials that failed to conform to the PO's specifications. The merits of this underlying dispute are not before the Court at this time.

APP asserts that the following clause contained in the "Standard Terms & Conditions of Sale" referenced in every quote provided to MMHOH by APP applies here:

> 9. **CHOICE OF LAW; EXCLUSIVE FORUM FOR DISPUTE RESOLUTION.** This Agreement has been made at St. Louis County, Missouri and the Agreement shall be governed by and construed in accordance with the internal laws of the State of Missouri applicable to businesses operating wholly within that state. Any and all claims, actions, disputes or proceedings arising out of this Agreement shall be brought exclusively in a court having a situs in or jurisdiction over St. Louis County, Missouri, and each party hereby irrevocably submits itself to the jurisdiction and venue of any such court and waives all objections to venue and convenience therein.

(Hofman Decl. ¶ 14 (2d)[5] & Ex. I.)[6]

---

[5] *See* n. 4, *supra*.

Gilmore attests that he "did not access APP's website … to review [the] terms and conditions because they did not relate to MMHOH's purchase of tubing from APP[;]" that "neither Mr. Hofman nor anyone else at APP asked me to access, read, review, acknowledge, and/or accept any terms beyond the quantity, price, and technical specifications set forth in APP's Order Confirmation S224352[;]" that he "did not advise Mr. Hofman that I had accessed, read, reviewed, acknowledged, or accepted any additional terms because I had not done so." (Gilmore Decl. ¶ 12.) He attests that "APP never provided me with a copy of its online terms and conditions or asked me to access, review, acknowledge, or accept them[,]" and he never did so. (*Id.* ¶¶ 16-17.)

## C.

The question, in light of these facts that are largely undisputed, is whether APP's Standard Terms & Conditions of Sale are part of the parties' agreement and, in particular, whether the forum selection clause therein applies and requires transfer to Missouri. A federal court sitting in diversity generally applies the substantive law of the forum state. *State Farm Fire & Cas. Co. v. Rowland Plumbing, Ltd.*, No. 5:11CV316, 2012 WL 169960, at *2 (N.D. Ohio Jan. 18, 2012) (citation omitted); *see also Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 368 (6th Cir. 2008) (citation omitted) (the law of the forum state "governs the initial question of whether the agreements containing the forum selection clauses were valid").

"In order to prove the existence of a contract, a plaintiff is required to demonstrate the essential requirements of an offer, acceptance, and consideration." *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 572 (6th Cir. 1999) (citing *Helle v. Landmark, Inc.*, 472 N.E.2d

---

[6] APP concedes that Ohio contract law governs the threshold question of whether the Terms & Conditions are part of the contract. (Motion at 76, n. 1.)

765, 773 (Ohio Ct. App. 1984)). "A valid and binding contract comes into existence when an offer is accepted." *Id*. (citing *Realty Dev., Inc. v. Kosydar*, 322 N.E.2d 328, 332 (Ohio Ct. App. 1974)).

"Typically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract." *Dyno Constr. Co.*, 198 F.3d at 572 (internal quotation marks and citations omitted). "However, a price quotation may suffice for an offer if it is sufficiently detailed and it reasonably appear[s] from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract." *Id.* (quotation marks and citations omitted). "[T]o constitute an offer, a price quotation must 'be made under circumstances evidencing the express or implied intent of the offeror that its acceptance shall constitute a binding contract.'" *Id.* (quoting *Maurice Elec. Supply Co. v. Anderson Safeway Guard Rail Corp.*, 632 F. Supp. 1082, 1087 (D.D.C. 1986)).

Merchants frequently create contracts by exchanging forms, rather than by executing a single written document. "A contract between merchants is enforceable if a party receives a written confirmation of the contract sufficient against the sender within a reasonable time, and the recipient does not give notice of its objection to its contents within ten days after it is received." *Alloys Int'l, Inc. v. Aeronca, Inc.*, No. 1:10-cv-293, 2012 WL 3600090, at *4 (S.D. Ohio Aug. 21, 2012) (footnote and citations omitted) (where the contract was memorialized in a purchase order and in associated terms and conditions, and where no objections were made within ten days, the terms and conditions were part of the contract). There is no dispute that APP and MMHOH are both merchants and that this was a commercial transaction.

APP is of the view that MMHOH accepted the Terms & Conditions of Sale, including the forum selection clause, because (1) during the process leading to the formation of

7

the contract, MMHOH was repeatedly advised and made aware of the fact that APP's sale of tubing to MMHOH was *subject to* APP's Standard Terms & Conditions of Sale that were available upon request and were also accessible through APP's website; (2) the terms and conditions were clearly referenced on APP's price quotation; (3) MMHOH issued its purchase order for tubing **"per"** the very price quotation that contained the clear reference to the terms and conditions; and (4) MMHOH ultimately confirmed the formal order, which also referenced APP's terms and conditions. (Motion at 78-79, citing *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1195 (S.D. Ohio 2013) (in determining whether parties to a contract reached mutual assent, Ohio law is "only interested in objective manifestations of intent") (citations omitted).)

But MMHOH argues that "'a mere reference to another document is not sufficient to incorporate that other document into a contract.'" (Opp'n at 135, quoting *Alloys Int'l Inc. Inc.*, 2012 WL 3600090, at *5.)[7] MMHOH insists that it never saw the terms and conditions, was never supplied a copy, was never told to review them, was not asked to agree to them, and never looked at them on the website. (Opp'n at 133.)[8]

MMHOH's argument is somewhat disingenuous, given that it first initiated contact with APP by filling out an online "Request A Quote" form. It was not as if MMHOH lacked adeptness at use of the internet and a company's website, nor was the "subject to" language relied upon by APP in small print or difficult to see on the forms that were exchanged.

---

[7] But *Alloys International* acknowledges that if the terms of an incorporated document are, as here, "known or easily available to the contracting parties," the incorporation is effective. *Alloys Int'l*, 2012 WL 3600090, at *5.

[8] In fact, MMHOH asserts that APP is urging application of the forum selection clause because, if it applies, so will other terms that MMHOH claims it would never have agreed to, such as a warranty limitation term of 30 days and a limitation-of-damages provision. MMHOH asserts that "the primary objective of APP's Motion is not merely to litigate this action in Missouri but is to lay the groundwork for wrongfully depriving Plaintiffs of the opportunity to pursue their claims at all." (Opp'n at 133.) These arguments go beyond the reach of the instant motion.

And, notably, MMHOH does *not* argue that it never noticed the repeated reference to APP's standard terms and conditions.

MMHOH cannot escape being bound by the terms of a contract simply by failing (or refusing) to read it. That is fundamental contract law. *See Hadden Co., L.P.A. v. Del Spina*, No. 03AP-37, 2003 WL 22006842, at *4 (Ohio Ct. App. Aug. 26, 2003) ("One of the most celebrated tenets of the law of contracts is that a document should be read before being signed, and the corollary to this rule is that a party to the contract is presumed to have read what he signed and cannot defeat the contract by claiming he did not read it."); *Williams v. Cap Gemini Am., Inc.*, No. 62953, 1992 WL 219181, at *2 (Ohio Ct. App. Sept. 10, 1992) ("A party that signs a contract without first making a reasonable effort to learn its contents cannot avoid that contract or its obligations in the absence of fraud or mutual mistake.")

Several courts have applied traditional contract law to find terms and conditions located on a company's website to be incorporated into a contract where they were clearly referred to and could be easily located by the challenging party, especially where that party is a commercial entity. *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) (citing cases);[9] *see also Discount Drug Mart, Inc. v. Devos, Ltd.*, No. 1:12 CV

---

[9] *Pentecostal Temple Church v. Streaming Faith, LLC*, No. 08-554, 2008 WL 4279842, at *5 (W.D. Pa. Sept. 16, 2008) ("internet provisions clearly incorporated by reference [into a purchase order], readily available on the identified internet site, and plainly and clearly set forth therein," are binding even where the party has not read them) (citing *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007)); *Spartech CMD, LLC v. Int'l Auto. Components Grp. N. Am., Inc.,* No. 08–13234, 2009 WL 440905, at *5 (E.D.Mich. Feb. 23, 2009) (rejecting argument that arbitration clause was invalid because it was contained in terms and conditions that party never received, where terms and conditions were contained on party's website and incorporated by reference into a purchase order); *cf. Oceanconnect.com, Inc. v. Chemoil Corp.,* No. H–07–1053, 2008 WL 194360, at *2–5 (S.D.Tex. Jan. 23, 2008) (arbitration clause enforceable under Texas law and UCC where terms and conditions were incorporated by reference in party's order confirmation and available for review on party's website, and where there was a course of dealing between the parties); *see also NewPage Corp. v. Mayfield Creek Forestry Consultants, LLC*, No. 3:14-cv-386, 2014 WL 7366201, at * (S.D. Ohio Dec. 24, 2014) ("when terms and conditions located on a website are expressly incorporated by reference in a purchase order, courts generally hold that those terms and conditions become a part of the agreement between the parties") (citing cases).

00386, 2013 WL 5820044, at *2 (N.D. Ohio Oct. 29, 2013) ("[i]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.") (quotation marks and citations omitted).[10] In opposition, MMHOH points to *Lightyear Commc'ns, Inc. v. Xtrasource, Inc.*, No. 02-cv-687, 2004 WL 594998 (W.D. Ky. Feb. 4, 2004) for the proposition that, where only one side of a two-sided contract was faxed to a party, and where the second side contained a consent-to-jurisdiction clause that the receiving party never saw, that provision was not incorporated by reference into the parties' contract. But *Lightyear* is distinguishable because the *only* way the receiving party could have accessed the additional terms was by reading the back side of a physical document, which it never received. Here, the terms incorporated by reference were available on a website that was specifically referenced on the forms exchanged electronically between the parties.

Here, MMHOH, when accepting the offer contained in APP's revised price quotation, expressly noted that the acceptance was "**per** Quote Q132442." (Doc. No. 12-2 at 99.) Quote Q132442 clearly indicated on each page that the quotation and "all sales resulting from it are subject to [APP's] Standard Terms & Conditions of Sale[.]" (*Id.* at 96-98.) APP, in turn, adopted that acceptance by repeating the reference to its online Terms & Conditions of Sale in Order Confirmation S224352. (*Id.* at 100-104.) MMHOH argues that the "per" applied only to the tubing that was being ordered, not to everything contained in the quotation. (Opp'n at 135, n.

---

[10] The court in *Discount Drug Mart* ultimately determined that, "although [the agreement] does make clear reference to another document (that being the terms and conditions contained on the website), incorporation of that 'document' could clearly result in surprise or hardship, since [the party] was free to unilaterally modify the Terms and Conditions at any time." *Id.* In fact, the party advocating application of the online terms and conditions in *Discount Drug Mart* conceded that it had modified them in the past. Although MMHOH attempts to rely upon *Discount Drug Mart*, the instant case is factually distinguishable in that APP asserts that the terms and conditions made reference to in the relevant documents here are still the terms and conditions available on APP's website. (Hofman Decl. ¶ 11.)

9.) But, again, this is disingenuous since the tubing was being *purchased* and the original quotation had clearly stated that all sales (i.e., purchases) were "subject to" the Standard Terms & Conditions of Sale.

The Court concludes that the Standard Terms & Conditions of Sale are part of the parties' contract. Further, as held by the Ohio Supreme Court: "Absent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust." *Kennecorp Mortg. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 610 N.E.2d 987 (Ohio 1993), syllabus; *see also* 610 N.E.2d at 989 (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)). MMHOH makes no such argument here regarding the forum selection clause. Therefore, the forum selection clause in this commercial contract between business entities is valid and enforceable.

In closing, this Court notes that its ruling relates solely to the question of the applicability of the forum selection clause in APP's Standard Terms & Conditions of Sale. This Court takes no position on the validity or enforceability of any other provision contained in those terms and conditions, as that is a contractual determination to be made on the merits by a court in the proper forum.

**D.**

APP also expressly seeks dismissal of Swanson Industries, Inc. for failure to state a claim, due to lack of any allegations of privity of contract between APP and Swanson. Plaintiffs oppose any such dismissal. But, in view of the Court's determination that the case

should be transferred, it will not address the parties' arguments with respect to Swanson Industries, Inc., leaving that for resolution by an appropriate court.

### III.

For the reasons discussed, defendant's motion to dismiss is denied without prejudice, and its motion to transfer venue is granted. Pursuant to 28 U.S.C. § 1404(a), this case is transferred to the United States District Court for the Eastern District of Missouri.

**IT IS SO ORDERED**.

Dated: February 23, 2016

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**